UNITED STATES BANKRUPTCY COURT   **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:           :
            :  Chapter 11
HAWKER BEECHCRAFT, INC., *et al.*,  :  Case No.: 12-11873 (SMB)
            :
      Debtors.   :
------------------------------------------------------------X
UNITED STATES OF AMERICA *EX REL.* :
DONALD MINGE and DAVID KIEHL and :
DONALD MINGE and DAVID KIEHL,  :
INDIVIDUALLY,       :
            :
      Plaintiffs,  :  Adv. Proc. No.: 12-01890
            :
  – against –      :
            :
HAWKER BEECHCRAFT CORPORATION, :
            :
      Defendant.  :
------------------------------------------------------------X

### MEMORANDUM DECISION DISMISSING COMPLAINT
### AS TO PLAINTIFFS' *QUI TAM* CLAIM

**A P P E A R A N C E S :**

HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202

  F. James Robinson, Jr., Esq.
  Gaye B. Tibbets, Esq.
   Of Counsel

   - and –

TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue, 13th Floor
New York, NY 10022

  Tammy P. Bieber, Esq.
  Wayne H. Davis, Esq.
   Of Counsel

*Attorneys for Plaintiffs*

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
801 17th Street NW
Washington, DC 20006

> Douglas W. Baruch, Esq.
> Jennifer M. Wollenberg, Esq.
>     Of Counsel

>    - and –

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

> James H. M. Sprayregen, P.C., Esq.
> Paul M. Basta, Esq.
> Patrick J. Nash, Jr., Esq.
> Ross M. Kwasteniet, Esq.
>     Of Counsel

*Attorneys for Defendant*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Section 1141(d)(6)(A), added to the Bankruptcy Code in 2005, provides that the confirmation of a plan does not discharge a corporate debtor from any debt "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute." The Plaintiffs commenced this adversary proceeding to obtain a determination that their claims against Hawker under the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729 *et seq.*, pending in Kansas, are not dischargeable under both clauses of the statute. The defendant moved to dismiss the complaint on several grounds. For the reasons that follow, the Court concludes that Plaintiffs' *qui tam* claim is dischargeable, and the complaint is dismissed as to that claim.

# BACKGROUND

The material facts relevant to the motion are not in dispute.  The plaintiffs Donald Minge and David Kiehl (the "Plaintiffs") are former employees of TECT Aerospace, Inc. or TECT Aerospace Wellington, Inc. (collectively, "TECT"), subcontractors of the defendant Hawker Beechcraft Corporation ("Hawker"), a reorganized debtor in this case and a manufacturer of military aircraft.  In 2007, the Plaintiffs filed a *qui tam* lawsuit under the FCA against, *inter alia*, Hawker and TECT in the United States District Court for the District of Kansas (the "Kansas Action").  The Plaintiffs alleged that Hawker made misrepresentations to the Government regarding certain components manufactured by TECT and incorporated into military aircraft sold to the Government.  The alleged misrepresentations were contained in certifications relating to 347 planes.  The Plaintiffs sought three times the amount of damages the Government sustained (aggregating nearly $2.3 billion), in addition to a civil penalty of $11,000 for each violation (aggregating $3.8 million) plus costs and attorneys' fees in the Kansas Action.  (*See Complaint*, dated Sept. 27, 2012, Ex. A (ECF Doc. # 1).)[1]

Hawker and certain affiliates filed these chapter 11 cases on May 3, 2012, staying the Kansas Action as to Hawker.  At the Debtors' request, the Court appointed Epiq Bankruptcy Solutions, LLC ("Epiq") pursuant to 28 U.S.C. § 156(c) to serve as the "claims agent" in the case.  (*See Order Authorizing the Employment and Retention of Epiq Bankruptcy Solutions, LLC as Notice and Claims Agent for Debtors*, dated May 4, 2012 (ECF Main Case Doc. # 45).)  On June 5, 2012, Epiq mailed the "Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, & Deadlines," dated June 5, 2012 (the "Notice") to creditors and other parties in interest.  (*See* ECF

---

[1]     "ECF Doc." refers to the electronic docket in this adversary proceeding.  "ECF Main Case Doc." refers to the electronic docket in the main bankruptcy case.

Main Case Doc. # 221.)  The Notice stated that the section 341 meeting of creditors would take

place at the office of the United States Trustee on June 26, 2012.  The Notice, which was based

on Official Form 9F, included a space entitled "Deadline to File a Complaint to Determine

Dischargeability of Certain Debts."   The space did not contain a date, and instead, stated that

"Notice of deadline will be sent at a later time."  Consistent with Official Form 9F, the second

page of the Notice included the following statement in the box entitled "Discharge of Debts":

> Confirmation of a chapter 11 plan may result in a discharge of debts, which may
> include all or part of your debt.  *See* Bankruptcy Code § 1141 (d).  A discharge
> means that you may never try to collect the debt from the debtors, except as
> provided in the plan.  *If you believe that a debt owed to you is not dischargeable
> under Bankruptcy Code § 1141(d)(6)(A), you must start a lawsuit by filing a
> complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to
> Determine Dischargeability of Certain Debts" listed on the front side.*  The
> bankruptcy clerk's office must receive the complaint and any required filing fee
> by that deadline.

(Emphasis added.)

The Plaintiffs commenced this adversary proceeding on September 27, 2012, to

determine the dischargeability of their claims against Hawker in the Kansas Action.  Conscious

of the requirements for the exception to discharge under § 1141(d)(6)(A), the *Complaint* alleged

that the "Plaintiffs/Relators' allegations that money was obtained by false pretenses and false

representations are allegations of debts that are 'of a kind specified in section 523(a)(2)(A),'"

(*Complaint* ¶ 38), "[b]ecause Plaintiffs are prosecuting the Kansas false claims action on behalf

of the Government, the debt is also 'owed to a domestic governmental unit,'" (*id.*), and Hawker's

"liability in the Kansas false claims action is both a debt of the kind specified in 523(a)(2)(A)

which is owed to a domestic governmental unit *and* is a debt owed to Plaintiffs as a result of the

action they have filed under Subchapter III of chapter 37 of title 31 of the United States Code."

(*Id.* ¶ 39 (emphasis in original).)

4

Hawker moved to dismiss the adversary proceeding on several grounds.  It raised the threshold argument that the *Complaint* was time-barred because the Plaintiffs had failed to file the adversary proceeding within 60 days of the date first set for the meeting of creditors pursuant to 11 U.S.C. § 341(a).  Hawker also argued that the Plaintiff's lacked standing to seek nondischargeability of their *qui tam* claim on behalf of the Government, but even if they had standing, the *Complaint* did not sufficiently plead the heightened level of scienter applicable to fraud claims under 11 U.S.C. § 523(a)(2).  Finally, Hawker maintained that the Plaintiffs had not asserted any claims against it that constituted debts "owed to a person" within the meaning of § 1141(d)(6)(A).

The Plaintiffs responded that the 60-day deadline did not apply to their claim, but even if it did, the 60-day deadline was never triggered because the clerk failed to send a notice of the deadline as required by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Furthermore, the Plaintiffs reasonably relied in good faith on the statement in the Notice that the notice of the deadline would be sent at a future date.  The Court should, therefore, use its equitable powers to allow the *Complaint* as timely.

The Court denied the Rule 12(b)(6) aspect of the motion to dismiss without prejudice from the bench, and reserved decision on the balance of the motion.

## DISCUSSION

### A.    Introduction

Prior to the 2005 Bankruptcy Code amendments, the confirmation of a corporate debtor's plan discharged all of its pre-confirmation debts, *see* 11 U.S.C. § 1141(d)(1), unless the plan provided for the liquidation of all or substantially all of the property of the estate and the debtor

did not engage in business after the consummation of the plan.  11 U.S.C. § 1141(d)(3).  Hawker

confirmed a non-liquidating plan, (*see Findings of Fact, Conclusions of Law, and Order*

*Confirming the Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the*

*Bankruptcy Code*, dated Feb. 1, 2013 (ECF Main Case Doc. # 1277)), and under the law as it

existed prior to the 2005 amendments, the Plaintiffs' claims would have been discharged.[2]

In 2005, Congress promulgated the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA").  As part of BAPCPA, Congress enacted § 1141(d)(6) to

provide certain limited exceptions to the otherwise comprehensive chapter 11 corporate

discharge.  Section 1141(d)(6) states:

> Notwithstanding paragraph (1), the confirmation of a plan does not discharge a
> debtor that is a corporation from any debt—
>
> (A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is
> owed to a domestic governmental unit, or owed to a person as the result of an
> action filed under subchapter III of chapter 37 of title 31 or any similar State
> statute; or
>
> (B) for a tax or customs duty with respect to which the debtor—
>
>> (i) made a fraudulent return; or
>>
>> (ii) willfully attempted in any manner to evade or to defeat such tax or
>> such customs duty.

This adversary proceeding concerns the interpretation of subparagraph (A).

Subparagraph (A) is comprised of two clauses separated by the comma that follows "domestic

governmental unit."  The first clause excepts from a corporation's discharge any debt "of a kind

specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental

unit," and the second clause excepts any debt "owed to a person as the result of an action filed

---

[2]     Technically, "debts" are discharged, but a debt is a "liability on a claim."  11 U.S.C. § 101(12).

under subchapter III of chapter 37 of title 31 or any similar State statute."  The remainder of this decision will refer to the first clause as "Clause 1" and the second as "Clause 2."

Generally speaking, there are two types of exceptions to discharge:  (1) those that are self-executing and (2) those that require the creditor to seek a determination of dischargeability in the bankruptcy court by a fixed deadline, failing which the exception does not apply and the debt is discharged.  *See* § 11 U.S.C. § 523(c)(1).  The majority of the exceptions to discharge listed in 11 U.S.C. § 523(a) fall into the first category.  The creditor or debtor can seek a determination of dischargeability at any time, Bankruptcy Rule 4007(b), but absent a determination of dischargeability and once the automatic stay terminates, the creditor can take steps to collect the debt from non-estate property.

Certain exceptions, however, including the exception for debts "of a kind specified" in 11 U.S.C. § 523(a)(2),[3] fall into the second category.  Section 523(a)(2)(A), the relevant subparagraph, excepts debts based on "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," and incorporates the elements of common law fraud.  *Field v. Mans*, 516 U.S. 59, 69 (1995).  Thus, the exception to discharge for debts based on fraud is not self-executing.  The creditor must satisfy the procedural requirements imposed by 11 U.S.C. § 523(c)(1) which states:

---

[3]  Section 523(a)(2) provides in relevant part that an individual debtor is not discharged from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be
> discharged from a debt of a kind specified in paragraph (2), (4), or (6) of
> subsection (a) of this section, unless, on request of the creditor to whom such debt
> is owed, and after notice and a hearing, the court determines such debt to be
> excepted from discharge under paragraph (2), (4), or (6), as the case may be, of
> subsection (a) of this section.

Accordingly, the creditor must seek a determination of dischargeability in the bankruptcy court,

and Bankruptcy Rule 4007(c) requires the creditor to file a complaint within 60 days of the first

date set for the meeting of creditors unless the court extends the deadline for cause.

The Plaintiffs allege that their claim is "of a kind specified in paragraph (2)(A) or (2)(B)

of section 523(a)," and non-dischargeable under § 1141(d)(6)(A). They did not file their

*Complaint* within the 60-day deadline, and the Court must decide whether their non-

dischargeability complaint, to the extent it is asserted under Clause 1, is time-barred.

## B.    The Claims Asserted Under Clause 1 of § 1141(d)(6)(A) are Time-Barred

As noted, Clause 1 excepts from a corporate chapter 11 debtor's discharge any debt "of a

kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic

governmental unit." The Plaintiffs allege that their claims in the Kansas Action are for debts

"obtained by false pretenses and false representations . . . 'of a kind specified in section

523(a)(2)(A).'" (*Complaint* at ¶ 38.) Further, "[b]ecause Plaintiffs are prosecuting the Kansas

false claims action on behalf of the government, the debt is also "'owed to a domestic

governmental unit.'" (*Id.*)[4]

---

[4]    As noted, Hawker challenges the Plaintiffs' standing to pursue a claim on behalf of "a domestic
governmental unit" under Clause 1, and notwithstanding their allegations in the *Complaint*, the Plaintiffs now
contend that they are only seeking relief under Clause 2. (*Plaintiffs' Response to Hawker Beechcraft Corp.'s
Motion to Dismiss Adversary Complaint*, filed Jan. 7, 2013 ("*Opposition*"), at 3 (ECF Doc. # 18).) The Court does
not reach the question of whether the Plaintiffs have standing to proceed under Clause 1 because that issue is
rendered moot by the conclusion that any claims under Clause 1 are time-barred. *See Carolina Cas. Ins. Co. v.
Pinnacol Assurarnce*, 425 F.3d 921, 926 (10th Cir. 2005) ("[S]tatutory standing need not be addressed if the court

The Plaintiffs nevertheless contend that their non-dischargeability claim under Clause 1 is not subject to the procedural requirements of 11 U.S.C. § 523(c)(1) and the 60-day limitations period imposed by Bankruptcy Rule 4007(c). They argue that Clause 1 is plain and is self-executing, pointing to the fact that it does not mention or incorporate the procedural requirement in § 523(c)(1). I agree with the former but not the latter; the omission of a reference to § 523(c)(1) does not mean that it does not apply.

The starting point for the interpretation of any statute is the plain language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). It is the duty of the Court to "'give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." *United States v. Menasche*, 348 U.S. 528, 520 (1955) (quoting *Nat'l Labor Relations Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937)); *accord U.S. v. Gitten*, 231 F.3d 77, 80 (2d Cir. 2000). If the statute's language is plain, the analysis ends unless its literal application produces an absurd result. *Ron Pair Enters.*, 489 U.S. at 242 ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (internal quotation marks omitted)); *accord Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000). Plainness or ambiguity is determined by reference to the statutory language itself, "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)); *United Sav. Assn. of Texas*

---

determines that the plaintiff loses on the merits anyway.") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2 (1998) ("[D]eciding whether any cause of action exists under a particular statute, rather than whether the particular plaintiff can sue, does not take the court into vast, uncharted realms of judicial opinion giving . . . .")). To the extent the Plaintiffs have asserted allegations under Clause 2, the Court will address that provision and the permissible scope of those claims below.

*v. Timbers Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is

a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the

remainder of the statutory scheme . . . .").  Where the statute's plain language as clarified by

context fails to resolve the ambiguity, a court may resort to canons of statutory construction to

aid in its interpretation.  *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012).

Several provisions of the Bankruptcy Code declare exceptions to discharge.  The

principal section, 11 U.S.C. § 523(a), provides that the discharge under Bankruptcy Code §§ 727,

1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual debtor from liability from the

types of debts listed in § 523(a).  Other provisions of the Bankruptcy Code that except debts

from discharge simply cross-reference to the exceptions in § 523(a).  *See, e.g.*, 11 U.S.C. §§

1141(d)(2) ("A discharge under this chapter does not discharge a debtor who is an individual

from any debt excepted from discharge under section 523 of this title."); 1228(a)(2) (discharge

order does not discharge any debt "of the kind specified in section 523(a) of this title.");

1228(c)(2) (same); 1328(a)(2) (discharge order does not discharge any debt "of the kind

specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of

section 523(a)."); 1328 (c)(2) (discharge order does not discharge any debt "of a kind specified

in section 523(a) of this title.").

Notably, none of these provisions refer to § 523(c)(1), or require the creditor to bring a

proceeding to determine the dischargeability of the debt.  Thus, each of these exceptions to

discharge, like § 1141(d)(6)(A), appears to be self-executing.  This conclusion is plainly

incorrect because it ignores § 523(c)(1) which states that "the debtor shall be discharged from a

debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section" unless the

creditor requests a determination and the bankruptcy court thereafter determines that the debt is

10

not dischargeable.  Thus, for example, the creditor asserting that its claim is not dischargeable in chapter 13 based on fraud must comply with § 523(c)(1) even though the provision excepting the debt from discharge does not mention § 523(c)(1).  *See In re Boltz-Rubinstein*, 454 B.R. 614, 618-619 (Bankr. E.D. Pa. 2011) (applying § 523(c)(1) and Bankruptcy Rule 4007(c) in a chapter 13 case); *Skehen v. Bare Bone Graphics (In re Sweet)*, Adv. Pro. No. 08-1056 M, 2009 WL 485136, at *4 (Bankr. D.N.M. Feb. 25, 2009) ("If the debt was incurred as a result of false pretenses, false representations, or actual fraud, it may be non-dischargeable under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 1328(a)(2), but a determination as to the dischargeability of the debt requires the timely filing of an independent adversary proceeding."); *In re Nwoke*, No. 07-10324-SSM, 2008 WL 750591, at *1 (Bankr. E.D. Va. Mar. 18, 2008) (denying motion under Bankruptcy Rule 4007(c) to extend the time to file a dischargeability complaint in chapter 13 case); 8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1328.02[3][d], at 1328-15 (16th ed. 2013) (hereinafter "COLLIER").  Section 1141(d)(6)(A) excepts from discharge any debt "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)," and this plainly falls within the debts covered by § 523(c)(1).

Furthermore, the reference to § 523(a)(2), which only applies to *individual* debtors, does not mean that § 523(c)(1) is similarly limited to individual debtors.  First, by its terms, § 523(c)(1) applies to "debtors" and not just individual debtors.  *See also* 11 U.S.C. § 103(a) (making chapter 5 of the Bankruptcy Code applicable to chapter 11 cases).  Second, § 523(c)(1) already applied to chapter 12 corporate debtors under pre-BAPCPA law.  "Only a family farmer or a family fisherman with regular annual income" is eligible for chapter 12 relief.  11 U.S.C. § 109(f).  A "family farmer" may be a corporation, 11 U.S.C. § 101(18)(B), and a "family fisherman" may also be a corporation.  11 U.S.C. § 101(19A)(B).

The confirmation of a chapter 12 plan does not discharge "debts of a kind specified in §

523(a)." 11 U.S.C. § 1228(a)(2), (c)(2).  The exclusion of § 523(a) type debts from the chapter

12 discharge applies equally to individual and corporate debtors.  *Southwest Georgia Farm*

*Credit, Aca v. Breezy Ridge Farms, Inc. (In re Breezy Ridge Farms, Inc.)*, Adv. Pro. No. 09-

1011-JDW, 2009 WL 1514671, at *3 (Bankr. M.D. Ga. May 29, 2009); *New Venture P'ship v.*

*JRB Consol., Inc. (In re JRB Consol., Inc.)*, 188 B.R. 373, 374 (Bankr. W.D. Tex. 1995).

Section 523(c)(1) unquestionably applies to creditors in an individual chapter 12 case, and there

is no basis to distinguish between the scope of the discharge in the individual and corporate

chapter 12 cases.  Yet limiting the operation of § 523(c) to discharge exceptions in an individual

case would place the corporate debtor at a disadvantage by possibly granting it a more limited

discharge than the individual chapter 12 debtor.

Thus, to the extent the applicability of § 523(c)(1) to Clause 1 of § 1141(d)(6)(A) is

ambiguous, any ambiguity is resolved when the provisions are read *in pari materia* with the

other discharge provisions and exceptions, including § 1328(a)(2) and the corporate chapter 12

discharge exceptions.  *See Cohen v. de la Cruz*, 523 U.S. 213, 219-20 (1998) (construing §

523(a)(2)(A) *in pari materia* with other exceptions to discharge); *New Lamp Chimney Co. v.*

*Ansonia Brass and Copper Co.*, 91 U.S. 656, 662-63 (1875) (reading discharge provisions under

the Bankruptcy Act as *in pari materia*); *Buckwald v. Williams Energy Mktg. & Trading Co. (In*

*re Magnesium Corp. of Am.)*, 460 B.R. 360, 367 (Bankr. S.D.N.Y. 2011) ("Statutory provisions

(including, and perhaps especially, those in the Bankruptcy Code) must be construed *in pari*

*materia*, and one statutory provision in the Bankruptcy Code cannot be considered without

reference to other relevant provisions of the same statute, and its subject and policy." (citations

omitted)); *see also Ingenito v. Bermec Corp.*, 376 F. Supp. 1154, 1177 (S.D.N.Y. 1974)

(applying "the familiar canon of statutory construction that parts of a statute are to be read together, in pari materia").  Accordingly, I conclude that § 523(c)(1) applies to debts owed by a corporate chapter 11 debtor to a domestic governmental unit under Clause 1 of § 1141(d)(6)(A).[5]

Although § 523(c) imposes the requirement, it does not say when the adversary proceeding must be filed.  Instead, as previously noted, the deadline is set forth in Bankruptcy Rule 4007(c).  *European Am. Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 53 (2d Cir. 1996). Bankruptcy Rule 4007(c) states:

> **(c) Time for Filing Complaint Under § 523(c) in a Chapter 7 Liquidation, Chapter 11 Reorganization, Chapter 12 Family Farmer's Debt Adjustment Case, or Chapter 13 Individual's Debt Adjustment Case; Notice of Time Fixed**
>
> Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a).  The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002.  On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

The rule requires a complaint to determine the dischargeability of a debt under § 523(c)(1) to be filed within 60 days of the first date set for the § 341(a) meeting of creditors.  It also requires the clerk to give notice of the deadline to creditors.  The Plaintiffs contend that even

---

[5]    One commentator reasons that because § 523(c)(1) (and Bankruptcy Rule 4007(c)) applies only to "a debt of a kind specified in paragraph (2)" of section 523(a), and section 523(a) only applies to individual debtors in chapter 11, "new section 1141(d)(6) does not seem to be within the scope of section 523(c)(1)."  Ralph Brubaker, *Taking Exception to the New Corporate Discharge Exceptions*, 13 AM. BANKR. INST. L. REV. 757, 770 n. 68 (Winter 2005) ("Brubaker").  I disagree for the reasons stated previously.  First, § 523(a)(2) now applies to corporate debtors through § 1141(d)(6)(A).  Second, while § 523(a) applies to *individual* debtors, § 523(c)(1) applies to all debtors in chapter 11.  *See* 11 U.S.C. § 103(a) (stating that chapter 5 of the Bankruptcy Code applies in a case under chapter 11).  Third, § 523(c)(1) already applies to corporate debtors in chapter 12 cases.

Moreover, as Professor Brubaker points out, there are additional policy reasons favoring the interpretation that the Government is subject to the 60-day deadline.  First, non-dischargeability essentially grants a priority to the governmental creditor at the expense of the non-governmental creditors, and thus, punishes the innocent creditors for the debtor's nefarious deeds.  Brubaker at 766-68.  Second, the possibility that a governmental creditor can assert a significant non-dischargeable claim years after the debtor emerges from bankruptcy will lend uncertainty to any restructuring efforts.  *Id.* at 770.

if Bankruptcy Rule 4007(c) applied to their claim, the period of limitations was never triggered because the clerk of the court, or in this case, Epiq, failed to send the 30-day notice of the deadline as required by the Rule.

Their argument has some support in the case law, including one decision by a bankruptcy judge in this district. *See Herbert v. Schwartz (In re Schwartz & Meyers)*, 64 B.R. 948, 950-55 (Bankr. S.D.N.Y. 1986); *accord Sun Bank/N. Florida, Nat'l Ass'n v. Podzamsky (In re Podzamsky)*, 124 B.R. 612, 613-614 (Bankr. M.D. Fla. 1991).  In *Schwartz & Meyers*, the clerk of the court *sua sponte* mailed a notice after the deadline had passed setting an incorrect deadline for the filing of non-dischargeability complaints.  *Schwartz & Meyers*, 64 B.R. at 950.  The bankruptcy court ruled that the notice was necessary to trigger the 60-day deadline to file a complaint.  *Id.* at 953.  Thus, the deadline did not start to run until the clerk sent the notice, albeit an incorrect notice.  *Id.* at 955.  The bankruptcy court further noted that "[w]here, as here, there has apparently been good faith reliance by the creditors on the September date, the prejudice to them in denying their day in court outweighs the debtors' plights to obtain a discharge."  *Id.*

*Podzamsky* reached the same conclusion relying on *Schwartz & Meyers*.  There, the clerk sent an incorrect notice stating that no deadline had been set for filing a complaint to determine the dischargeability of a § 523(a)(2) debt.  *Podzamsky*, 124 B.R. at 613.  The bankruptcy court concluded that the creditors never received the notice required by Bankruptcy Rule 4007(c), they had the right to assume that they would receive such notice before their rights were eliminated, and those rights could not be defeated because they relied on a notice sent by the clerk that the time within which to file complaints would be sent at a later date.  *Id.* at 614.

14

*Podzamsky* and *Schwartz & Meyers* are not persuasive.  The reasoning of *Schwartz &*

*Meyers* was rejected in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Rockmacher (In re*

*Rockmacher)*, 117 B.R. 69 (Bankr. S.D.N.Y. 1990), *aff'd*, 125 B.R. 380 (S.D.N.Y. 1991).  There,

the notice sent by the clerk set forth the time set for the meeting of creditors pursuant to § 341(a),

but failed to specify a deadline for filing a complaint to determine the dischargeability of the

individual chapter 11 debtors' debts under § 523(a).  *Id.* at 70.  Rejecting the contrary authority,

including *Schwartz & Meyers*, Bankruptcy Judge Schwartzberg concluded that due process was

satisfied because the plaintiff received a notice that allowed it to calculate the bar date for filing

non-dischargeability complaints.  *Id.*; *accord Grossie v. Sam (In re Sam)*, 894 F.2d 778, 781 (5th

Cir. 1990) ("[T]he purpose of the notice requirement is satisfied when the creditor has actual

knowledge of the case in time to permit him to take steps to protect his rights.  Under such

circumstances, technical compliance with Rule 4007(c)'s requirement that the creditor receive

thirty days notice of the bar date frustrates the expeditious and efficient administration of cases

in the bankruptcy court and is unnecessary to provide adequate notice.")  The bankruptcy court

concluded:

> Accordingly, the omission of a bar date for filing nondischargeability complaints
> in the thirty day notice which the court issued and which the plaintiff received
> with respect to the commencement of the instant Chapter 11 case did not excuse
> the plaintiff from complying with the sixty day period for filing
> nondischargeability complaints following the date set by the court for the meeting
> of creditors.

*Rockmacher*, 117 B.R. at 71.

The District Court affirmed.  It also expressly rejected the reasoning of *Schwartz &*

*Meyers*, *see* 125 B.R. at 383-84, and reiterated that constitutional due process was satisfied

because the creditor had received notice of the creditors meeting and participated in it, and the

creditor's counsel was an experienced bankruptcy practitioner.  *Id.* at 384.  The District Court

concluded, as the Bankruptcy Court did, that mere clerical errors that do not cause prejudice should not defeat the goal of the bankruptcy rules to "promote the expeditious and efficient administration of bankruptcy cases by assuring participants in bankruptcy proceedings 'that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.'" *Id.* (quoting *Sam,* 894 F.2d at 781(quoting *Neeley v. Murchison*, 815 F.2d 345, 347–48 (5th Cir.1987)).

I join *Rockmacher* and the many other cases that have expressly rejected the reasoning of *Schwartz & Meyers* that the clerk's notice is necessary to trigger the 60-day deadline. *E.g.*, *Neeley*, 815 F.2d at 347 ("[W]e decline to follow *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr. S.D.N.Y. 1986), which characterizes the notice requirement as 'the necessary predicate and trigger to the running of the 60-day period.'"); *Bishop v. Strum*, 148 B.R. 619, 622 (D. Kan. 1992) ("The court finds the holding of *Schwartz & Meyers* to be unsound. . . ."); *In re Marino*, 195 B.R. 886, 894 (Bankr. N.D. Ill. 1996) (*Schwartz & Meyers* and similar decisions "are in the minority, do not give sufficient weight to the statutory and rule scheme, and are not persuasive; the majority view will be followed here."); *Town of Nottingham v. Diberto (In re Diberto)*, 136 B.R. 24, 25 (Bankr. D. N. H. 1992) (*Schwartz & Meyers* "was not followed [in *Rockmacher*] by Judge Schwartzberg who sits in the same district and I do not follow it today."); *P.S.T.C. Employees Fed. Credit Union v. Kearney (In re Kearney)*, 105 B.R. 260, 264 (Bankr. E.D. Pa. 1989) (distinguishing *Schwartz & Meyers* and similar holdings "and, further, to the extent their analyses depart from the one I adopt, I respectfully disagree."); *see Rowe v. Steinberg*, 253 B.R. 524, 527 (E.D. Mich. 2000) ("'[T]here is almost universal agreement that the provisions of F.R.B.P. 4007(c) are mandatory and do not allow the Court any discretion to grant a late filed motion to extend time to file a dischargeability complaint,' even where the bankruptcy court

16

failed to provide creditors with formal notice as provided for under Rule 4007(c)." (quoting *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 459 (11th Cir. 1988) (citation omitted))); *cf. GAC Enters., Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 457 (2d Cir. 1995) (*Podzamsky* and *Schwartz & Meyers* "appear to have been influenced in part (perhaps dispositively) by the creditors' unwitting reliance on flawed notices issued by the clerk of the court."); *see generally* 9 COLLIER ¶ 4007.04[2], at 4007-12 ("[T]he requirement that notice of the deadline be sent to creditors does not excuse a creditor who does not receive that notice from complying with the deadline.  As long as the creditor had actual knowledge of the bankruptcy in time to file a dischargeability complaint, the deadline continues to apply." (citing cases)).

The Notice that Epiq sent to the Plaintiffs informed them that the § 341(a) meeting was set for June 26, 2012.  It did not include any incorrect information, such as the wrong deadline.  The information it did include allowed the Plaintiffs to compute the deadline for filing the adversary proceeding.  The sixtieth date fell on a weekend, and the deadline was therefore extended to Monday, August 27, 2012.

The *Complaint* was not filed until September 27, 2012.  If the Plaintiffs contend that they did not file a timely complaint because they were awaiting a further notice from the clerk, the District Court in *Rockmacher* provides a ready response:

> More importantly, counsel's suggestion that he did not calculate the sixty days himself because he was expecting further notice from the court is belied by the fact that he ultimately filed the complaint, though late, without ever receiving any notice from the court.  Counsel obviously knew of the rule, but failed to comply with it, notwithstanding the fact that he had all the necessary information before him to protect his client's rights.

*Rockmacher*, 125 B.R. at 384.

Thus, to the extent that the *Complaint* asserts a claim on behalf of a domestic

governmental unit to except from discharge a debt of the kind specified in Bankruptcy Code §

523(a)(2), (*see Complaint* ¶¶ 38-39), the claim is time-barred under Bankruptcy Rule 4007(c).

This conclusion is consistent with the one reached by the leading bankruptcy law commentator,

*see* 8 COLLIER ¶ 1141.05[1][b][i], at 1141-22 (stating that the governmental unit must file its

complaint objecting to dischargeability within the time limits prescribed by Bankruptcy Rule

4007(c)), and Official Form 9F drafted by the Advisory Committee on Bankruptcy Rules and

adopted by the Judicial Conference of the United States.  *See* OFFICIAL BANKR. FORM 9

Committee Note (2005-2007), *reprinted in* NORTON BANKR. L. & PRAC. 3D, NORTON

BANKRUPTCY RULES, at 923 (West 2012-2013 ed.) ("Forms 9F and 9F (Alt.) are amended to

include a deadline to file a complaint to determine the dischargeability of a debt, in conformity

with § 1146(d)(6), which also was added to the Code in 2005.").

**C.     The Claims Asserted Under the Clause 2 of § 1141(d)(6)(A) are Not Time-Barred,
        But an FCA *Qui Tam* Claim is Not a Debt "Owed to a Person"**

The Plaintiffs contend that the *Complaint* is not time-barred because they are proceeding

under Clause 2 of § 1141(d)(6)(A), which excepts from discharge "any debt . . . owed to a person

as the result of an action filed under subchapter III of chapter 37 of title 31."   They contend that

the introductory phrase of Clause 1—"of a kind specified in paragraph 2(A) or 2(B) of section

523(a)"—does not modify the text of Clause 2 because the two clauses are independent of each

other.  (*Opposition* at 20, 21.)  Consequently, their allegations under Clause 2 are not subject to

the requirements of § 523(c) and Bankruptcy Rule 4007(c).  (*See id.* at 3.)

Initially, Hawker agrees with the Plaintiffs that Clause 1 and Clause 2 are separate and

independent.  (*Memorandum of Law in Support of Hawker Beechcraft Corp.'s Motion to Dismiss*

18

*Adversary Complaint*, dated Nov. 21, 2012 ("*Motion*") at 13-14 (ECF Doc. # 10).)  Somewhat

inconsistently, however, Hawker also argues that the reference to § 523(a)(2) in Clause 1 of §

1141(d)(6)(A) applies to a proceeding under Clause 2.  (*See id.* at 15; *Reply in Support of*

*Hawker Beechcraft Corp.'s Motion to Dismiss Adversary Complaint*, dated Jan. 17 at 2-3 (ECF

Doc. # 19).)  Hawker also disputes the Plaintiff's ability to assert "substantive FCA causes of

action against TECT and HBC in which Plaintiffs are suing in the name of the United States"

under Clause 2 because any such claims are not debts "owed to a person" under § 1141(d)(6)(A).

(*Motion* at 20-21.)

**1.     Clause 1 and Clause 2 of § 1141(d)(6)(A) are Independent and the Reference
to § 523(a)(2) Does Not Apply to Clause 2**

To reiterate, the full text of section 1141(d)(6)(A) provides:

Notwithstanding paragraph (1), the confirmation of a plan does not discharge a
debtor that is a corporation from any debt—

(**A**) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is
owed to a domestic governmental unit, or owed to a person as the result of an
action filed under subchapter III of chapter 37 of title 31 or any similar State
statute; or

11 U.S.C. § 1141(d)(6)(A).  Clause 1 and Clause 2 are subordinate to the main clause of §

1141(d)(6)—"the confirmation of plan does not discharge a debtor that is a corporation from any

debt."  The syntax and grammar of subdivision (A) of § 1141(d)(6) compel the conclusion that

the two subordinate clauses, *inter se*, are independent.  First, they are joined by a coordinating

conjunction (in this case "or") separated by a comma placed before the conjunction.  *See* H.

RAMSEY FOWLER & JANE E. AARON, THE LITTLE, BROWN HANDBOOK 455 (9th ed. 2004);

BRYAN A. GARNER, THE ELEMENTS OF LEGAL STYLE 19 (Oxford University Press 1991) ("The

comma separates independent clauses joined by coordinating conjunctions:  *and, but, or, nor,*

and *for*.").

Furthermore, Congress employed the parallel use of the phrase "owed to" in "*owed to* a domestic governmental unit" and "*owed to* a person" in this subdivision.  As Hawker pointed out, "[t]he only reasonable reading for having parallel phrases in a statute is to create two separate clauses because, otherwise, Congress could have simply omitted the second 'owed to' and stated 'owed to a domestic governmental unit or person.'"  (*Motion* at 13-14.)  *Accord Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2006) (stating that because Congress framed the provision in the alternative and bifurcated a subsection with the "parallel inclusion of the verb 'exercises' at the beginning" of each clause the Court could not "commingle the textually distinct provisions of the two clauses"); *Gitten*, 231 F.3d at 80 (reasoning that when Congress "uses a bifurcating format" that separates one clause from another by repeating a certain phrase at the beginning of each clause, Congress intended for two separate clauses to exist because if Congress did not intend for two separate clauses "it could more clearly have expressed that intent by omitting" the second use of the phrase).

The legislative history to § 1141(d)(6)(A) also supports the conclusion that Clause 1 and Clause 2 are independent:

> Section 708 amends section 1141(d) of the Bankruptcy Code to except from discharge in a corporate chapter 11 case a debt specified in subsections 523(a)(2)(A) or (B) of the Bankruptcy Code owed to a domestic governmental unit.  *In addition*, it excepts from discharge a debt owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 of the United States Code or any similar state statute.

H.R. REP. NO. 109-31 at 102 (2005) (emphasis added).  The House Judiciary Committee's use of "in addition" connotes its intent to treat debts "owed to a person as the result of an action filed under subchapter II of chapter 37 of title 31" as a separate component of § 1141(d)(6)(A).

Accordingly, I conclude that the phrase "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)" does not modify the text of Clause 2.

**2.    A Relator's FCA *Qui Tam* Claims Are Not Debts "Owed to a Person"**

**i.    *Qui Tam* Actions Under the FCA**

The FCA imposes civil liability upon "any person who," *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim[6] for payment or approval."  31 U.S.C. § 3729(a)(1).  The defendant "is liable to United States Government for a civil penalty" of up to $10,000, "plus 3 times the amount of damages which the Government sustains because of the act of that person."  *Id.*  An action under the FCA may be commenced in one of two ways.  First, the Government itself may bring a civil action against the alleged false claimant.  31 U.S.C. § 3730(a).  Second, as is relevant here, a private person (the relator) may bring a *qui tam*[7] civil action "for the person and for the United States Government" against the alleged false claimant "in the name of the Government."  31 U.S.C. § 3730(b)(1).

If a relator initiates the FCA action, the relator must serve the Government with a copy of the complaint and any supporting evidence, 31 U.S.C. § 3730(b)(2), and the Government has 60 days from receipt of the papers to elect whether it will intervene and proceed with the action.  *Id.*  If the Government intervenes, it assumes "primary responsibility for prosecuting the action," though the relator may "continue as a party to the action," 31 U.S.C. § 3730(c)(1), and is entitled to a hearing before a voluntary dismissal and to a hearing and a court determination of

---

[6]    The term "claim" means, *inter alia*, "any request or demand, whether under a contract or otherwise, for money or property . . . [that] is presented to an officer, employee, or agent of the United States."  31 U.S.C. § 3729(b)(2)(A)(i).

[7]    "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'"  *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000).

reasonableness before settlement.  31 U.S.C. § 3730(c)(2).  If the Government declines to

intervene within the 60-day period, the relator has the exclusive right to prosecute the action, 31

U.S.C. § 3730(b)(4)-(5), and the Government may subsequently intervene only upon a showing

of "good cause."  31 U.S.C. § 3730(c)(3).

Pursuant to 31 U.S.C. § 3730(d), the relator is entitled to receive a share of the proceeds

of the action.  If the Government declines to intervene, the relator is entitled to "not less than 25

percent and not more than 30 percent of the proceeds of the action or settlement" depending on

what the court decides is reasonable.  31 U.S.C. § 3730(d)(2).  If the Government elects to

proceed with the action, the relator is entitled to receive "at least 15 percent but not more than 25

percent of the proceeds of the action or settlement of the claim, depending upon the extent to

which the person substantially contributed to the prosecution of the action."  31 U.S.C. §

3730(d)(1).  In either case, the relator may only recover his bounty from the proceeds.  31 U.S.C.

§§ 3730(d)(1) ("Any payment to a person under the first or second sentence of this paragraph

shall be made from the proceeds."); 3730(d)(2) (the relator's share "shall be paid out of such

proceeds").  In contrast, the relator is also entitled to reasonable attorneys' fees, costs and

expenses to be "awarded against the defendant."  31 U.S.C. § 3730(d)(1); *accord* § 3730(d)(2).

Finally, the FCA provides a cause of action against employers who retaliate against *qui*

*tam* relators.  *See* 11 U.S.C. § 3730(h).  The "employee, contractor, or agent" is "entitled to all

the relief necessary to make that employee, contractor, or agent whole," 11 U.S.C. § 3730(h)(1),

including "reinstatement with the same seniority status that employee, contractor, or agent would

have had but for the discrimination, 2 times the amount of back pay, interest on back pay, and

compensation for any special damages sustained as a result of the discrimination, including

litigation costs and reasonable attorneys' fees."  11 U.S.C. § 3130(h)(2).

### ii.    Debts Resulting from Violations of 31 U.S.C. § 3129(a) are Owed to the United States

In concluding that the relator in a *qui tam* lawsuit had standing to prosecute the FCA

claim, the Supreme Court explained in *Vermont Agency of Natural Resources*, the relator has "an

interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." *Vermont

Agency of Natural Res.*, 529 U.S. at 772 (emphasis in original).  Under the FCA, the relator

brings the action "for the person and for the United States Government," 11 U.S.C. § 3730(b)(1);

the relator has the right to continue as a party to the action even when the Government intervenes

in the action, § 3730(c)(1); the relator has the right to a hearing before the Government's

voluntary dismissal of the suit, § 3730(c)(2)(A); and the relator is entitled to a court

determination of reasonableness before the Government may settle a suit over the relator's

objection.  § 3730(c)(2)(B); *Vermont Agency of Natural Res.*, 529 U.S. at 772.  Accordingly, for

standing purposes, the FCA relator is more than a "statutorily designated agent of the United

States, *in whose name* . . . the suit is brought." *Id.* (emphasis in original).  Rather, the "*qui tam*

relator is, in effect, suing as a partial assignee," *id.* at 773 n. 4, of the "Government's damages

claim." *Id.* at 773.

Although the relator has standing to pursue the FCA claim, the violator nevertheless "is

liable to the United States Government," 31 U.S.C. § 3729(a)(1), and "the claim itself belongs to

the United States." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir.

2008); *accord United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 98 (2d Cir.

2008).  The Government is the "real party in interest" in *qui tam* actions, *Eisenstein*, 540 F.3d at

98, and "[t]he relator, then, is 'a mechanism of enforcement' by which the government can

recover for its injury." *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d

677, 682 (S.D.N.Y. 2009) (Chin, J.) (quoting *United States ex rel. Semtner v. Med. Consultants,*

*Inc.*, 170 F.R.D. 490, 495 (W.D. Okl. 1997)).  While it is true the relator has a "concrete private

interest in the outcome of the suit" with respect to "the bounty he will receive if the suit is

successful," *Vermont Agency of Natural Res.*, 529 U.S. at 772 (internal quotation marks

omitted), his interest "does not even fully materialize until the litigation is completed and the

relator prevails." *Id.* at 773.  The interest is "merely a 'by product' of the suit itself." *Id.*

In short, although the relator has standing to prosecute a *qui tam* claim under the FCA,

his standing does not change the nature of the underlying debt.  The debt is owed to the

Government and not to the relator.

### iii.    Application of § 1141(6)(A) to FCA *Qui Tam* Claims

As noted, Clause 1 excepts from discharge debts "owed to a domestic governmental unit"

and Clause 2 excepts from discharge debts "owed to a person."  "Persons" and "governmental

units" are mutually exclusive under the Bankruptcy Code; the term "person" includes

"individual, partnership, and corporation, *but does not include governmental unit*."  11 U.S.C. §

101(41) (emphasis added).  The alleged false claimant under the FCA is "liable to the

Government," 31 U.S.C. § 3129, and its debt, therefore, is "owed to a domestic governmental

unit" and not "owed to a person" within the meaning of § 1141(d)(6)(A).  Accordingly, Clause 2

does not extend to debts under the FCA that are owed to the Government and pursued by the

relator on behalf of the Government.

The opposite conclusion, that a "debt owed to a person" under Clause 2 includes the

relator's *qui tam* claim, would lead to absurd results.  While the Government's direct claim under

Clause 1 would be subject to § 523(c)(1) and therefore dischargeable, the relator's claim on

behalf of the Government for the same injury would be non-dischargeable because Clause 2 is

24

self-executing.  Consequently, the Government could avoid the deadline by ceding the prosecution to a relator or declining to intervene.  On the other hand, if the relator brought the action, and the Government did intervene "at a later date upon a showing of good cause," 31 U.S.C. § 3730(c)(3), it would transform an action covered by Clause 2 to one under Clause 1 triggering the requirements of §§ 523(a)(2), 523(c)(1) and Bankruptcy Rule 4007(c), and possibly rendering a timely action untimely.  There is no reason to assume Congress intended such different treatment with respect to the Government and the relator for the same claim.  Rather, assuming (without deciding) the relator has standing to seek non-dischargeability of its *qui tam* claim in bankruptcy, the relator, as partial assignee of the Government's claim, would stand in the Government's shoes and have to proceed under Clause 1, subject to the same substantive and procedural requirements as the Government.

The Court's conclusion does not render Clause 2 toothless.  The FCA identifies certain claims that are owed to the relator rather than the Government as "*the result of* an action filed under subchapter III of chapter 37 of title 31."  11 U.S.C. § 1141(d)(6)(A) (emphasis added).  For instance, the relator is entitled to an award against the defendant for reasonable attorneys' fees, costs and expenses in a successful *qui tam* action.  11 U.S.C. §§ 3730(d)(1); 3730(d)(2), and upon a proper showing, the defendant may receive an award against the relator for its reasonable attorneys' fees and expenses.  *See* 31 U.S.C. § 3730(d)(4).

This claim could be substantial.  The Plaintiffs also filed a proof of claim (No. 782) to recover their *qui tam* claim, and nothing in this opinion affects the allowance of that claim.  If the Debtors object and the Plaintiffs successfully prosecute their claim as part of the claims allowance process, they may be entitled to an award against Hawker for their attorneys' fees and legal expenses, and that claim may be non-dischargeable.  I do not decide the precise issue now

25

except to conclude that I am not dismissing the *Complaint* to the extent that it alleges that a claim for attorneys' fees and expenses is non-dischargeable.[8]

Hawker contends that the claim for attorneys' fees is non-dischargeable only if the underlying *qui tam* claim is non-dischargeable under § 523(a)(2)(A). (*Motion* at 22.) I disagree. Attorneys' fees and expenses are "awarded against the defendant," 31 U.S.C. § 3730(d)(2), and are debts "owed to a person." The claim of non-dischargeability is governed by Clause 2 to which § 523(a)(2) does not apply.

## CONCLUSION

The *qui tam* claims asserted against Hawker in the Kansas Action and this adversary proceeding are dischargeable, and were discharged under the Debtors' confirmed plan. It is not clear whether or to what extent the Plaintiffs have personal claims against Hawker covered by Clause 2. The parties are directed to settle an order that reflects the disposition of the *Motion* in accordance with the prior bench ruling and this opinion, and schedule a conference to consider further proceedings.

Dated: New York, New York
       July 24, 2013

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge

---

[8]     FCA also grants an "employee, contractor, or agent" the right to bring a personal claim if he suffers retaliation for bringing a *qui tam* claim under the FCA or attempting to stop violations of the FCA, 31 U.S.C. § 3730(h)(1), and may recover back pay and special damages, "including litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h)(2). The Plaintiffs were not employed by Hawker and have not asserted a retaliation claim against it.